JUDGE DUVALL
delivered the onnion of the court:
George Thompson was the owner of a large estate, consisting chiefly of land and slaves, in the county of Mercer. George C. Thompson was his only child. The latter had been married three times in the lifetime of his father, and had made his father’s house the home of himself and his family. It appears that George Thompson had never given his son any part of his estate, and that this circumstance, together with others which it is unnecessary to allude to, occasioned such dissatisfaction on the part of the son’s third wife, who is the appellant in this case, that she, after the birth of two children, determined to return, and did return to her father’s house, with her children, in the winter of 1823-4, and there remained during the session of the legislature, of which her husband was then a member. She states in her answer that her husband had, at that time, no home in Mercer county, or elsewhere, to carry her, and the place in Mercer where they had lived was controlled in such a manner as to preclude her from staying there any longer, and that she had gone to her father’s with the intention of not again returning to Mercer to live. Thus matters stood until George Thompson, on the 19th of January, 1824, executed to his son, George C. Thompson, a deed for over one thousand acres of valuable land, and about fifty slaves. He, at the same time, wrote a letter to his son, informing him of the gift, and of his intention to give him more at a future period, and stating also his intention to build another residence on another *672 part of bis land, either for himself or his son, as might be afterwards determined. Mrs. Thompson thereupon agreed to return, and did return, with her husband, to their former home.
George Thompson, in accordance with the intention expressed in the letter referred to, went on to build another residence at a place called Pleasant Fields, to which he removed, leaving his son George and his family in possession of the old homestead, called Shawnee Springs.
On the 5th of August, 1825, which was about the time of his removal, George Thompson executed to his son a deed of conveyance for the Shawnee Springs tract of land, which deed, 'after describing the tract by metes and bounds, contains the following provisions:
“ To be held, occupied, used, and enjoyed by him during his life, and he is further, if he deems it proper, during his life, to transfer and convey to any one or more of his posterity the whole or any part or parts of said tract of land at his pleasure; and at the death of said George C. Thompson, the said land, in the whole or in parts, is to be vested in his posterity, or such of them, one or more, as he may select, choose, and direct, by his last will, should he not have done it in his lifetime by deeds. And the said George G. Thompson is also at liberty, and is hereby vested with the right, if he thinks proper so to do by his last will, to vest in any widow whom he may leave, an estate in said land or any part thereof, not to extend to a greater or better estate than during her remaining his widow, but the same is never to be the dower of his widow, or any part thereof, or subject, under any circumstances, to the claim of dower by said widow.”
Afterwards, on the 22d June, 1830, he also executed to his son a conveyance for about fifty slaves, which contains the following provisions:
“ The said slaves and their increase to be had, held, and used by my said son, George 0. Thompson, for his own use and benefit during his natural life, and after his death to go to, and be divided among the children, or any one or more of the children or grand-children of my said son, in such manner and proportions to each, and under such limitations and restrictions as to *673 title, as my said son shall, at his discretion, choose and think proper to be expressed, and directed by my son, by any will or other instrument of writing by him executed; or any part thereof to be given and disposed of by my said son in his lifetime, at his discretion, among his posterity as aforesaid; and if my said son shall choose and think proper to sell any one or more of said slaves, be is hereby authorized to do so without being in anywise accountable to his children in consequence thereof, or for the purchase money; or he may exchange any one or more of them for other slaves, taking the bill or bills of sale at his discretion, conveying a title with the same limitations as those contained in the present deed of gift. And my son is also fully authorized to lend any or all of the slaves aforesaid, or of their increase, to any widow he may leave at his decease, to her use for any length of time he may choose, not exceeding the term of her widowhood, subject, at the expiration of said loan, to the distribution which my son may direct as aforesaid among any one or more of his posterity. But it is clearly understood that in no event whatsoever, are any of the said slaves or their increase to be ever subject to a claim of dower by any widow which my said son may leave at his decease; and the conveyance and gift are upon this expressed condition and under this limitation.”
Both deeds were recorded in March, 1851. George C. Thompson, the grantee, continued in the possession of the lands and slaves thus conveyed until his death, which occurred in 1856. He left a will in which he made some provision for his wife, and executed the power conferred by the two deeds, by devising the land and slaves to his children, but declined loaning any part of either to his wife, during widowhood. His widow renounced the provisions of the will, and retained the possession of the mansion-house and premises, claiming the right to do so.
The appellees then filed this petition, seeking to have dower allotted to the appellant in the lands and slaves embraced by the deed of January, 1824, and in other lands in which they admitted she was entitled to dower, and seeking also a settlement and distribution of the estate of their father. They *674 claimed that the appellant was not entitled to dower in the lands or slaves embraced in the deeds of the 5th August, 1825, and 22d June, 1830.
The appellant answered, claiming that she was entitled to dower in the lands and slaves conveyed by those two deeds, basing her claim chiefly upon two grounds: 1, that heríate husband held the lands and slaves in contest, not under those deeds, but as the heir at law of his father, George Thompson, and that he had so held them for such a length of time as to vest in him an absolute estate in fee, of which she was, by law, endowable; and 2, that the two deeds were devised, executed, and accepted by the parties for the fraudulent purpose and with the fraudulent intent to deprive her of her right of dower.
The court below, upon final hearing, decided against her claim to dower in the estate embraced in the two deeds referred to, and she has prosecuted this appeal, insisting upon a-reversal of the judgment upon the grounds relied upon in her answer, and upon the additional ground that the deeds themselves must be construed as vesting in the grantee an estate which is by law subject to dower.
We proceed to consider, briefly, the several questions thus presented.
1. And first, as it respects the manner in which this estate was held by George C. Thompson in his lifetime, it appears that his father lived about nine years after the execution of the deed of 1825, and four years after that of 1830. During this period, then, the son unquestionably held the land under the title created by the deeds, for he certainly was not the heir of his father in the lifetime of the latter, and could not therefore have held as such. Did he renounce or repudiate this title, or set up any adverse claim, or profess to hold adversely to it, after his father’s death? The record contains no proof of his having done either. On the other hand, the testimony shows conclusively that the deed of 1825 was accepted by the grantee, and that he never pretended to claim the land under any other title. The deed was kept from record by the most obvious motives, and in accordance with the suggestions of the family lawyer, who informed the parties that their failure to *675 record the deed would in no wise affect its validity as to them. And that it was the intention and settled purpose of both the parties that the deed should be recorded at a future and proper time, is also clearly established by the testimony; and the argument which attempts to show that the father and son had ágreed that the latter was to have the privilege of destroying the deed, and of claiming the land against its provisions and as heir at law, is founded upon the merest assumption, and is opposed to all the facts and circumstances of the case. The execution and existence of the deeds were known to many persons in the family and out of it; they invested the children of the grantee with interests of which they'could not have been divested by any such agreement, and the deed to the land is expressly referred to in the will of George Thompson. The destruction of the deeds by the grantee would therefore have amounted to nothing; it would neither have enlarged his own estate, nor would it have destroyed or impaired the remainder interest of the children. But there is no proof that anything of the sort was agreed upon, or was ever intended or contemplated by either of the parties.
At what precise period of time George C. Thompson acquired the possession of the slaves embraced in the deed of 1830, does not certainly appear from the proof, and there is therefore some doubt whether he had held them for five years previously to the execution of that deed or for a shorter period. But these are matters wholly immaterial to the questions before us. It is not denied that the slaves were held and claimed by George C. Thompson under his father, and it is equally clear, we think, upon this record, that he continued to hold them, up to the date of the deed, as the bailee of, and under a loan from, his father. He united with his father in the execution of that deed, and he and all claiming under him were ever afterwards estopped to deny the previous title of the grantor, or to set up any claim inconsistent with the title conferred by the deed to which Geo. C. Thompson was a party, and which limited his interest in the slaves to a life estate merely.
2. In regard to the alleged fraud in the execution of the deeds in question, we need only say that the proof wholly fails *676 to support the charge, so often reiterated in the answer of the appellant, and in the argument of her counsel. What rights had she in the estate owned by George Thompson, of which she could have been defrauded by any disposition he may have chosen to make of it? The property was his own, absolutely; neither she nor her husband had a shadow of legal right to any part of it; and if he had chosen, by deed or devise, to give the whole to a stranger, she would have had the same ground to question such disposition as she has for impeaching these conveyances to his son. The whole ground of complaint, in the one case or in the other, would amount to nothing more than that George Thompson had failed to confer upon either her husband or herself such an interest in his estate as he had power to do, and might have done. The charge of fraud is considered utterly groundless.
3. The remaining question relates to the construction and "effect of the two deeds. What estate do they confer upon the grantee, George C. Thompson? In the deed for the land the language is “to be held, occupied, used, and enjoyed by him during his life.” And in the deed for the slaves it is “ to be held and used by my said son, George C. Thompson, for his own use and benefit, during Ms natural life.” These expressions clearly define the estate and interest with which the grantee was invested; that estate and interest is strictly and explicitly limited to a life estate, and there is nothing else contained in either deed which can be construed as operating to enlarge it; for, between the estate thus limited to the grantee, and the powers created and defined by the subsequent provisions, there is an obvious distinction. And where, as in this case, the powers are restricted to particular objects, they can never be so executed by the holder or donee as to make himself the beneficiary, as he might do if the powers were general. In the dispositions which George C. Thompson was authorized to make of the pi'operty embraced by both deeds, he was expressly confined and restricted to his posterity. It is true that he was authorized to sell or exchange the slaves, for the proceeds of which he was not to be held liable to his children; yet he was not authorized to give them except to his posterity, nor to emanci *677 pate them, and this restriction upon the right of disposition reduces the power from a general to a special or particular power.
But even if the power conferred by the deeds had been general, and had authorized the grantee to dispose of the property at his discretion, still the life estate to which the power was annexed would not have been thereby enlarged into a fee-simple estate. This is well settled by the authorities. “ A devise to A for life, expressly (as in this case) with remainder to such persons as he shall, by deed or will, appoint, will of course not give him the absolute interest, although he may acquire it by the exercise of his power.” (Sugden on Powers, 99.) And if, in such case, A should die before making an appointment to himself under the power, his widow would not be entitled to dower. A case still stronger against the right of the wife is stated by the same author elsewhere. He says “that if an estate is limited to such uses as A shall appoint, and until appointment, to A and his heirs in fee-simple, an appointment by A will cut off the right of dower of A’s wife, which attached to the fee vested in him until he does appoint.” (p. 337.)
Wherever a power is clearly intended to be given, the devisee cannot be regarded as taking the fee. Thus, in the case of Collins vs. Carlisle's heirs, (7 B. Mon., 14,) the devise was in these words: “ The balance of my estate, wholly, I leave to my beloved wife, Nancy Carlisle, and to be disposed of by her, and divided among my children, at her discretion.” It was held that she took but a life estate, and having died without fully executing the power, her children took the estate, not as heirs, but under the will. The same principle is settled in the case of McGaughey's adm'r vs. Henry, (15 B. Mon., 383.)
But we deem it unnecessary to multiply the citation of authorities upon this point, feeling satisfied that under any admissible construction of the deeds under consideration, Geo. C. Thompson must be regarded as having been entitled to a life estate only in the property conveyed by them, and that his widow, the appellant, was not entitled to dower either in the lands or slaves.
The judgment is therefore affirmed.